**Dennis Ray GRAVES**

v.

**David GARRAGHTY, Warden.**

**Civ. A. No. 85–0410–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 2, 1985.

David E. Boone, Boone & Warren, Richmond, Va., for plaintiff.

Jacqueline G. Epps, Asst. Atty. Gen., Richmond, Va., for defendant.

## JUDGMENT

WARRINER, District Judge.

For the reasons set forth in the accompanying opinion it is hereby ORDERED that the petition for writ of habeas corpus sought by Dennis Ray Graves, petitioner, against David Garraghty, respondent, is DENIED.

And it is so ORDERED.

## OPINION AND ORDER

On 19 April 1985 petitioner, by counsel, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By order of 22 May 1985, the Court granted respondent's motion for an extension of time within which to file a responsive pleading to the petition. Respondent submitted a motion to dismiss on 30 May 1985. On 19 June 1985 petitioner submitted a brief in opposition to the respondent's motion. Respondent failed to rebut. The motion is now ripe for consideration. The Court's jurisdiction is conferred by 28 U.S.C. § 2241.

Petitioner, a State inmate at the Nottoway Correctional Center, is currently incarcerated pursuant to judgment of the Circuit Court of Montgomery County, Virginia, wherein he was convicted of rape, abduction, and two counts of attempted sodomy. Petitioner attacks the validity of these convictions by making the following allegations:

(a) The trial judge had no authority to rule on the credibility of the witnesses during an evidentiary hearing conducted under Va.Code § 18.2–67.7.[1]

(b) If the trial judge's interpretation of the Rape Shield Law is correct, then the statute is unconstitutional.

(c) There was no manifest necessity requiring the judge to declare a mistrial, *sua sponte.* Therefore, petitioner's second trial was in contravention of the double jeopardy clause of the United States Constitution.

A review of the evidence presented at the evidentiary hearing to determine admissibility[2] and the trial judge's determinations based upon that evidence is necessary. At the evidentiary hearing, defendant testified that he had had consensual sexual intercourse with the complaining witness "toward the fall" of 1976 and again about six months later (Tr. 54–55). Defendant also stated that the complaining witness was 14 years old at the time of the first occurrence and either 14 or 15 at the time of the second occurrence. (Tr. 55). Defendant also asserted that these were the only two times that he had had sexual intercourse with the complaining witness prior to the alleged rape in July, 1982. (Tr. 53). Finally, defendant acknowledged that the complaining witness had become married at some time between 1976 and the time of the alleged rape. (Tr. 57).

The complaining witness, defendant's cousin, testified that she had never had sexual intercourse with defendant until he raped her on 10 July 1982, but that defendant had forced her "to let him feel of [her]" when she was 11 and 12 years old. (Tr. 58). She also testified to his persuading her to "use my hand." (Tr. 60). The complaining witness also stated that after those occurrences, she did not see him for approximately nine years, resuming her familial relationship with him shortly before the alleged rape in July, 1982. (Tr. 61–62).

At the conclusion of the evidentiary hearing the judge ruled that the evidence of prior sexual contact between the complaining witness and defendant would not be admitted. The court's ruling from the bench was as follows:

> And I'm convinced that any prior sexual conduct between these two parties as far as sexual intercourse did not occur from the evidence that I have heard here. Mr. Graves has testified that his mother, Mrs. Graves, who is here in the witness room, caught them in the act at the grandmother's house at, on Park Street. I haven't heard any evidence to that effect and I, therefore, am of the opinion, and so rule, that any prior sexual, alleged sexual conduct between the parties would not be admissible in the trial of this case before this jury, and so rule.

(Tr. 64). When pressed by defense counsel, the judge explicitly stated that the reason he was not admitting the evidence was that he believed the complaining witness and did not believe defendant with respect to their versions of prior sexual contact between the two of them. (Tr. 65).

**1.** Section 18.2–67.7(A) provides as follows:

*Admission of Evidence.*—A. In prosecutions under this article, general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:

1. Evidence offered to provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution, limited to evidence designed to explain the presence of semen, pregnancy, disease, or physical injury to the complaining witness's intimate parts; or

2. Evidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case; or

3. Evidence offered to rebut evidence of the complaining witness's prior sexual conduct introduced by the prosecution.

**2.** Such a hearing is required by the statute. Va.Code § 18.2–67.7(C).

## I

 Addressing petitioner's claim that the trial judge's interpretation of Va.Code § 18.2–67.7 was erroneous, the interpretation of a State statute regarding the admissibility of evidence is a matter of State law not cognizable on federal habeas review. Absent circumstances impinging upon the fundamental fairness of petitioner's conviction, a federal court cannot grant habeas relief based on a claim that the court improperly rejected relevant admissible evidence. *Grundler v. North Carolina,* 283 F.2d 798, 800 (4th Cir.1960).

It appears that under the Virginia statute the trial judge is called upon to apply a mixed question of fact and law. The trial judge must determine whether alleged sexual conduct "occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case." Va.Code § 18.2–67.7.

 An interpretation of Virginia law by the Supreme Court of Virginia constitutes the final authority on the statute's construction. Petitioner presented his claim regarding the trial court's interpretation of § 18.2–67.7 to the Supreme Court of Virginia in a petition for a writ of error. The petition was denied. Under Virginia law, such a denial constitutes a judgment on the merits of the claim. *See Saunders v. Reynolds,* 214 Va. 697, 204 S.E.2d 421 (1974). Accordingly, petitioner's claim under (a) above must be DISMISSED insofar as it constitutes a dispute as to the proper interpretation of a State rule of practice.

## II

Petitioner alleges that, assuming that the trial judge's interpretation as to his proper function under the Rape Shield statute is correct, i.e., that he shall admit or exclude on the basis of his credibility findings, the statute is unconstitutional because it deprives petitioner of his right to confront the witnesses against him. See *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Petitioner's claim under the confrontation clause of the Sixth Amendment is derived from a mixed base and its rationale is not altogether clear in his brief. On one level it appears that petitioner argues that the ruling made pursuant to the statute prevented petitioner from "confronting" the prosecution witness by inquiring into her past sexual conduct. On a different level, I think, petitioner points out that the trial judge made his ruling on admissibility on the basis of the trial judge's findings as to the witnesses' relative credibility. Petitioner argues that while materiality and relevance are for the judge to decide, credibility is for the jury. Here petitioner may be invoking the right to trial by jury, also under the Sixth Amendment.

Viewed on either basis and on both respondent argues that this habeas court should not consider petitioner's claims because of petitioner's procedural defaults in the State courts. Although admitting that petitioner alluded to the Sixth Amendment right of confrontation in his petition for a writ of error (respondent's Exhibit 1 at 13), respondent contends that petitioner did not specifically raise the "right to confrontation" as an assignment of error in the Virginia Supreme Court. Respondent argues that, pursuant to Rule 5:21, Rules of the Virginia Supreme Court, counsel is required to "lay his finger on the error." *Omohundro v. County of Arlington,* 194 Va. 773, 75 S.E.2d 496 (1953). Respondent urges that counsel's failure to place this issue squarely before the Virginia Supreme Court constitutes a procedural default.

Furthermore, respondent asserts that a second procedural default occurred when petitioner earlier failed to raise a confrontation issue during his motion to set aside the verdict. Under Virginia practice it is necessary to make a timely objection at the trial level in order to preserve the right to challenge the constitutionality of a statute on appeal. *Manley v. Commonwealth,* 211 Va. 146, 176 S.E.2d 309 (1976), *cert. denied,* 403 U.S. 936, 91 S.Ct. 2245, 29 L.Ed.2d 716 (1971). In view of both these defaults respondent argues that the doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, *reh'g denied,*

434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977), precludes federal habeas review of petitioner's confrontation claims. Petitioner counters that trial counsel excepted to the judge's ruling regarding the admissibility of the proffered evidence. Trial counsel argued at the time that the evidence was relevant and that the issue of credibility was a jury question, not one for the judge. (Tr. 66).

The nature of and the practice under a State's contemporaneous objection rule is one for the State courts to apply under State law. So the question arises: How did the courts of the Commonwealth apply the contemporaneous objection rule in this case?

■ The constitutionality of the statute as applied by the trial judge was raised by petitioner on direct appeal. Although there and here petitioner is less than clear as to the exact nature of his Sixth Amendment claims, it is clear that he believes what the trial judge did was wrong. The Virginia Supreme Court denied petitioner's petition for a writ of error, thus ruling on the merits of the claim. *Saunders v. Reynolds*, 214 Va. 697 at 703, 204 S.E.2d at 424 (1974). This ruling on the merits shows that the Supreme Court of Virginia disregarded any failure contemporaneously to object at the trial level. Since the Supreme Court of Virginia has declined to apply their own procedural bar, the *Wainwright* doctrine is inapplicable. *Griffin v. Commonwealth*, 606 F.Supp. 941, 946 (E.D.Va. 1985). Accordingly, the Court will proceed to address the merits of petitioner's claim. Petitioner's claim here appears to be a hybrid allegation of a denial of his Sixth Amendment right to trial by jury in conjunction with his Sixth Amendment right to confront the witnesses against him. The foundation of petitioner's claim is the trial judge's statement quoted p. 1350, *supra.*

The trial judge also stated as his specific reason for this ruling that "I believe this young lady" and "I don't believe him."

(Tr. 65). Were this all that appeared, serious questions under the Sixth Amendment would present themselves. See *United States v. Parodi*, 703 F.2d 768, 790 (4th Cir.1983).

■ I would note in passing that the trial court's decision not to admit the evidence of prior sexual conduct upon the issue of credibility, does not seem to me to comport with the relevant provisions of Virginia's Rape Shield Statute, Va.Code § 18.2–67.7(A)(2). The trial judge quite properly could have based his decision upon the fact that even assuming that defendant's version of the facts be correct, as I assume here, the alleged sexual contact between defendant and the complaining witness occurred five to six years prior to the alleged rape, and hence would not have been "reasonably proximate to the offense." Va.Code § 18.2–67.7(A)(2).

Similarly, the trial judge properly could have found that the evidence of prior sexual conduct while relevant was not material. More than five years had elapsed between the last time that defendant had had sexual contact with the complaining witness in 1976 and the alleged rape in July 1982. During that time the complaining witness had grown from a 14 or 15 year-old child to become a woman of 21 years of age. Moreover, the complaining witness no longer was a single girl; she was a married woman. These factors eliminated any materiality the evidence of prior sexual conduct might have had with respect to the issue of whether the complaining witness consented to sexual intercourse with defendant in July 1982.

■ Thus under a reasonable construction of the Rape Shield Statute [3] and under general rules of evidence, the evidence could have been excluded without considering the complaining witnesses' contradictory evidence. If the ruling of the trial court can be sustained on a basis which does not implicate constitutional concerns it

---

**3.** I recognized at pp. 1350–1351, *supra,* that the trial court's interpretation of the statute was affirmed by the Virginia Supreme Court.

is of no moment, on habeas consideration, that the basis stated by the trial court does implicate constitutional concerns. *Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

Without regard to the United States Constitution, under Virginia law "the credibility of witnesses and the weight to be given their testimony are questions exclusively for the jury." *Coppola v. Commonwealth,* 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), *cert. denied,* 444 U.S. 1103, 100 S.Ct. 1069, 62 L.Ed.2d 788 (1980). Furthermore, "conflicts of credibility between witnesses are matters for the jury." *United States v. Parodi,* 703 F.2d at 790.

 This case law indicates that the trial judge based his decision to exclude the evidence of prior sexual conduct on inappropriate grounds under Virginia law. If this Court were a Virginia appellate court, I might reverse the trial judge for basing his decision on reasoning that is contrary to Virginia law. This Court does not sit as a court of appeals, however, but as a court with the limited power to grant a writ of habeas corpus should it find that plaintiff was substantially prejudiced through the violation of a federal constitutional right.

In that capacity, I must first refer to the Supreme Court's clear statement that:

> Although 28 U.S.C. § 2254 authorizes the federal courts to entertain [a prisoner's] claim that [he is] being held in custody in violation of the Constitution, it is not a grant of power to decide constitutional questions not necessarily subsumed within the claim. Federal courts are courts of limited jurisdiction. They have the authority to adjudicate specific controversies between adverse litigants over which and over whom they have jurisdiction. In the exercise of that authority, they have a duty to decide constitutional questions when necessary to dispose of the litigation before them. But they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.

*Ulster County Court v. Allen,* 442 U.S. at 154, 99 S.Ct. at 2223; *see also Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.,* 467 U.S. 138, 104 S.Ct. 2267, 2279, 81 L.Ed.2d 113 (1984); *Shaw v. Martin,* 733 F.2d 304, 314 (4th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 230, 83 L.Ed.2d 159, *reh'g denied,* — U.S. —, 105 S.Ct. 555, 83 L.Ed.2d 441 (1984).

Since the petition presently before the Court can be resolved without resort to constitutional issues, I am compelled to resolve this case on other than constitutional grounds. As I observed above, the trial judge unquestionably could have decided to exclude the evidence of prior sexual conduct between the complaining witness and defendant on the basis of the lack of "reasonable proximity" under the Virginia Rape Shield Statute or upon a lack of materiality of the evidence. Thus under State law, there existed two readily recognizable grounds upon which the trial judge could have decided not to admit this evidence. Had the trial judge decided to exclude the evidence without giving a reason for his determination, petitioner would have no reason to complain that the evidence was improperly excluded. Petitioner similarly has no grounds upon which to assert that his constitutional rights have been violated merely because the trial judge's reasoning arguably was defective under both State law and federal constitutional law.

Since there are ample grounds upon which the trial judge could have decided to exclude the evidence of prior sexual conduct between the complaining witness and defendant, defendant has failed to demonstrate the existence of "circumstances impugning fundamental fairness or infringing specific constitutional protections." See *Grundler v. North Carolina,* 283 F.2d at 802; *Chance v. Garrison,* 537 F.2d 1212, 1215 (4th Cir.1976). Absent such circumstances, the admissibility of the evidence at issue does not present a federal question. See *Chance v. Garrison,* 537 F.2d at 1215. Accordingly, petitioner's claim under (b) above must be DISMISSED as failing to

present a federal question for consideration by this Court.

## III

Petitioner's final claim is that the trial court's action in entering, *sua sponte,* a mistrial subjected petitioner to a second prosecution, entailing double jeopardy. See *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). The incident dealt with in I and II above occurred in the trial resulting in defendant's conviction and imprisonment. Earlier defendant had faced trial before a jury on the same charge which had resulted in a mistrial. Defendant's counsel, ignorant of the Virginia Rape Shield Statute, had in his opening statement related to the jury the alleged prior consensual sexual intercourse. Because of this disclosure the trial court had declared a mistrial.

■ Both parties agree that jeopardy attached at petitioner's first trial; the trial was aborted following the empaneling and swearing of the jury. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Although a declaration of a mistrial does not in all circumstances implicate the prohibition against double jeopardy, in general when a trial judge grants a mistrial, *sua sponte,* a habeas court must examine the issue of whether a "manifest necessity" existed for taking such action. *Arizona v. Washington,* 434 U.S. at 504, 98 S.Ct. at 829.

Respondent argues that this Court need not address the issue of manifest necessity because petitioner acquiesced in the ruling at trial. Respondent also points out that the problem arose solely because of defense counsel's ignorance of the statute. Defense counsel did state:

I did not read the statute and I will be very frank with the Court on it. I don't see what difference it would make because I think that from his testimony, it should be admissible evidence anyway. If you want to declare a mistrial, then

I'm sorry I caused the Court that trouble but I didn't know about it.

(Tr. 38).

■ However blameworthy counsel was, it cannot fairly be said that he waived defendant's rights under the double jeopardy clause. For example, counsel stated, "Far be it from me to ask for a mistrial on this case." (Tr. 42). Prior to the Court's ruling, petitioner's counsel urged the Court to reconsider its ruling on the admissibility of the evidence in an attempt to prevent the Court's ruling on the mistrial issue. (Tr. 66). I don't believe there was a waiver which relieves this court from facing the double jeopardy issue. I must proceed to address the substantive issue of whether a manifest necessity existed justifying the trial judge's actions.

*Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), is so directly apposite to the present action that a careful review of that case is in order. In *Arizona v. Washington,* defendant earlier had been granted a new trial because the prosecution had withheld exculpatory evidence from the defense. At the second trial, defense counsel made reference to the fact that the prosecution had hidden evidence from the defense during the previous trial. *Id.* at 498–99, 98 S.Ct. at 826–27. The trial judge granted the prosecution's motion for a mistrial without expressly finding that there was "manifest necessity" or that he had considered alternative solutions and had concluded that none would be adequate. *Id.* at 500–01, 98 S.Ct. at 827–28. After the Arizona Supreme Court refused to review the mistrial ruling, defendant filed a petition for a writ of habeas corpus in federal court. The federal district judge granted the writ, finding that the trial judge was required to make express rulings on "manifest necessity" and on the possibility of courses alternative to a mistrial. The district court held that because the trial judge had not made such rulings explicitly, defendant was entitled to the writ despite improper conduct by his counsel. The Ninth Circuit affirmed. *Id.* at 501–02, 98 S.Ct. at 828.

The Supreme Court reversed the Ninth Circuit. Justice Rehnquist first observed that the concept of manifest necessity requires that a prosecutor prove that a "high degree" of necessity is present before a trial court may conclude that a mistrial is appropriate. *Id.* at 505–06, 98 S.Ct. at 830. With this in mind, the Court held that where defense counsel makes improper and prejudicial remarks during his opening statement to the jury, "the trial judge's determination is entitled to special respect," equivalent to that accorded a judge's decision to declare a mistrial when he arrives at the conclusion that a jury is deadlocked. *Id.* at 510, 98 S.Ct. at 833.

An underlying question, of course, is whether defense counsel's remarks in the instant case were improper. In *Arizona v. Washington*, the Supreme Court stated that that issue was there foreclosed "by respondent's failure to proffer any Arizona precedent supportive of his contention and by the State court's interpretation of its own law, buttressed by the consistent opinion of the federal district court and the court of appeals." *Id.* at 511, 98 S.Ct. at 833.

In the present action, petitioner similarly has failed to cite any Virginia precedent which would indicate that evidence of prior sexual conduct between himself and the complaining witness under all the facts and circumstances of this case was admissible as a matter of law. As has been noted above, the evidence was inadmissible both under the Rape Shield Statute and under ordinary rules of materiality. The capacity of counsel's assertions to prejudice the Commonwealth's right to a fair trial is self-evident. The collateral harm to a complaining witness cannot be ignored. Such harm, along with the resultant discouraging influence in the prosecution of rape cases, was the legislative reason for enacting the Rape Shield Statute. As I have previously discussed at some length, there were several grounds upon which the trial judge could have decided to exclude the evidence under State law, and I can find no grounds upon which the evidence must have been admitted as a matter of law. I

"therefore start from the premise that defense counsel's comment was improper and may have affected the impartiality of the jury." *Id.* at 511, 98 S.Ct. at 833.

█ Given the impropriety of defense counsel's reference to prior sexual conduct in his opening statement, the trial judge was in the best position to judge the extent of possible bias that comment had upon the jury. As Justice Rehnquist held in *Arizona v. Washington:*

> [T]he overriding interest [in] the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.
>
> \* \* \* \* \* \*
>
> An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements tend to create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial.... Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases.

*Id.* at 511–13, 98 S.Ct. at 833–34. I am therefore bound by the Supreme Court's instructions to give great deference to the trial judge's evaluation of possible juror bias in cases such as this.

The inquiry must not end there, however. The Court in *Arizona v. Washington* held that reviewing courts must satisfy themselves that "the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.* at 514, 98 S.Ct. at 835. In *Arizona v. Washington*, the Supreme Court held that

the trial judge had acted well within his discretion because he was in the best position to assess the impact of the "improper and highly prejudicial evidence" upon the jury, and because the trial judge "did not act precipitately in response to the prosecutor's request for a mistrial." *Id.* at 515, 98 S.Ct. at 835.

 Similarly, in this case the trial judge was in the best position to judge the possible impact of defense counsel's improper opening statement upon the jury. He saw the manner in which counsel emphasized this revelation to the jury. He saw the facial and other overt reactions of the jury. By comparison I only have a transcript. Furthermore, the record reveals that the trial judge was concerned with making a proper determination with respect to whether to grant a mistrial.[4] The trial judge ruled after a few moments. After the lapse of 33 months, counsel for petitioner is still unable to show the trial court's judgment was faulty when he determined it was necessary to abort the trial. I therefore find that the trial judge exercised sound discretion with respect to the issue of possible juror bias created by defense counsel's improper comment.

Finally, the fact that the trial judge did not make an explicit finding of "manifest necessity" or of the possibility of alternative solutions to the problem presented by defense counsel's improper remarks is not determinative in this case. The Supreme Court held in *Arizona v. Washington* that where "the record provides sufficient justification for the State court ruling, the failure to explain that ruling more completely does not render it constitutionally defective." *Id.* at 516–17, 98 S.Ct. at 836. At the State trial proceeding reviewed in *Arizona v. Washington,* as in the present case, the trial judge made no explicit finding with respect to manifest necessity or alternatives to a mistrial. This Court will not impose procedural requirements upon

the State courts that the Supreme Court has held to be excessive. See *id.* at 516, 98 S.Ct. at 835.

For these reasons, I find that the trial court's mistrial order is supported by the manifest necessity which is required in a case of this kind, that alternatives were properly considered, and that therefore the State did not put defendant in jeopardy twice for the same offense.

Petitioner's petition for writ of habeas corpus will be DENIED.

A certificate of probable cause to appeal is GRANTED.

An appropriate judgment shall issue.

And it is so ORDERED.

---

**4.** THE COURT: "Now, I've got to make the decision of whether or not to grant a mistrial."

MR. GRAYBEAL: "Your Honor, if I might just have a moment before you rule on that."

THE COURT: "Yeah, I'd like to have a moment to think about it myself to be frank with you."

(Tr. 65–66).